## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL GONZALEZ-DIAZ | : | |
|     Petitioner, | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 20-282 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | |

### MEMORANDUM

**TUCKER, J.**                                                              **July 13, 2022**

Presently before the Court is Angel Gonzalez-Diaz's ("Gonzalez-Diaz" or "Petitioner") "Motion to Vacate Pursuant to 28 U.S.C. § 2255" (ECF No. 19), the Government's Response (ECF No. 22), and Petitioner's Reply Brief (ECF No. 23). Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Gonzalez-Diaz's Motion is **DENIED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

    **A. Initial Offense, Arrest, and Removal**

On November 2, 2006, a grand jury in the Eastern District of Pennsylvania indicted Gonzalez-Diaz, a citizen of the Dominican Republic, with federal drug trafficking offenses, which included: (1) conspiracy to distribute 100 grams or more of heroin; (2) eight counts of distribution of heroin; (3) possession with intent to distribute 100 grams or more of heroin; (4) possession of a firearm in furtherance of a drug trafficking crime; and (5) aiding and abetting. On August 20, 2007, Petitioner plead guilty to those charges.

Approximately two years later, on April 14, 2009, the district court sentenced Gonzalez-Diaz to five years imprisonment with an additional five years of supervised release. On May 27,

---

[1] This section draws primarily from Petitioner's Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 19) and the Government's Response (ECF No. 22).

2009, Petitioner was provided a Form I-294 and ordered removed from this country. The I-294 form, or a Warning to Alien Ordered Removed or Deported, informed him that: (1) he was prohibited from re-entering the United States at any time because he was convicted of an aggravated felony; (2) he was required to request and obtain permission from the Attorney General to reapply for admission to the United States following his deportation; and (3) illegal re-entry is a crime under 8 U.S.C. § 1326, that is punishable by two to twenty years imprisonment.

Three months later, Immigration and Customs Enforcement ("ICE") served Petitioner with a I-851 Form, Notice of Intent to Issue a Final Administrative Removal Order. This form informed him that the Government charged him as removable, pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), because he was convicted of an aggravated felony relating to a drug trafficking crime. That same day, on August 13, 2009, Gonzalez-Diaz received a Final Administrative Removal Order which removed him to the Dominican Republic.

On January 20, 2011, following the completion of his sentence, the United States deported Petitioner. Immigration officials executed a I-205 Form, a Warrant of Deportation, which contained his name, signature, photograph, alien number, and fingerprint.

### B. Immigration Proceedings

On June 29, 2020, the Department of Homeland Security issued a Notice of Intent to Reinstate the Prior Order of Removal, via an I-871-Form, for Petitioner. On July 2, 2020, Petitioner signed the form, but sought protection from it due to fear of returning to the Dominican Republic.

On July 13, 2020, an Asylum Officer interviewed Gonzalez-Diaz and determined that he failed to establish a reasonable fear of persecution or torture. After the interview and determination, Petitioner requested that an immigration judge review the officer's determination.

On July 22, 2020, Immigration Judge Alice Hartye reviewed the Asylum Officer's determination and found that Gonzalez-Diaz "established a reasonable possibility that he would be persecuted on the basis of a protected ground or a reasonable possibility that [he] would be tortured" in the Dominican Republic. *See* ECF No. 22. Judge Hartye vacated the officer's decision and placed Petitioner in "withholding-only" proceedings.[2]

On September 9, 2020, the Department of Homeland Security filed a motion to terminate the "withholding-only" proceeding without prejudice as Petitioner was not in ICE's custody at the time. Instead, he was serving his criminal sentence. Gonzalez-Diaz, however, returned to ICE custody in August 2021 and immigration proceedings.

### C. Present Criminal Proceedings

On July 2, 2020, the United States Government found that Gonzalez-Diaz unlawfully reentered the country and was taken into ICE's administrative custody. Philadelphia Police Department officers, ICE officers, and Drug Enforcement Administration ("DEA") agents stopped Petitioner as a part of an enforcement operation. Petitioner initially informed them that: (1) his name was "Miguel Rodriguez Morales;" (2) his date of birth is October 19, 1982; and (3) he was from Puerto Rico. ICE officers scanned his fingerprints using a mobile fingerprint machine noted that his prints appeared to look mutilated, though it was relatively minimal. The

---

[2] A withholding proceeding is a removal proceeding that involves individuals who are undocumented and are "subject to reinstatement of prior orders of removal under" the INA "have a reasonable fear of persecution or torture." *See* Executive Office for Immigration Review Policy Manual, at 7.4(h).

fingerprints matched FBI Number 810195FB8, which is the unique number the FBI assigned to Gonzalez-Diaz.

Officers arrested Petitioner and interviewed him. Once in custody, he waived his *Miranda* rights and admitted: (1) his true and correct name was Angel Emilio Gonzalez-Diaz; (2) he also used the name Miguel Rodriguez Morales; (3) he was born in and is a citizen of the Dominican Republic; (4) his parents were also citizens of the same country; (5) he did not possess any documentation that permitted him to legally reside in the United States; (6) he was deported from the United States in January 2011; (7) he did not obtain permission from the Secretary of Homeland Security or the United States Attorney General to re-enter the United States after his deportation; and (8) he paid someone in the Dominican Republic to burn his fingerprints.

On August 28, 2020, Petitioner waived prosecution by Indictment and was charged by Information, with one count of unlawfully re-entering the United States, in violation of 8 U.S.C. § 1326(a), (b)(2). On September 29, 2020. Petitioner pled guilty to this charge, pursuant to a plea agreement. Pursuant to the agreement, this Court sentenced Gonzalez-Diaz on January 27, 2021 to 15 months imprisonment and one year of supervised release. *See* ECF No. 17.

### D. Gonzalez-Diaz's Instant Petition

On August 11, 2021, Petitioner filed his § 2255 motion[3] wherein he alleges that: (1) he possesses reasonable fear in returning to the Dominican Republic and was previously granted withholding; (2) he did not unlawfully or illegally reenter the United States after removal, because he reentered through an official land border with the assistance of "Mexican Coyotes" which does not constitute illegal entry; (3) he lacked capacity to comprehend the plea agreement,

---

[3] He was subsequently released fifteen days later from the Bureau of Prisons' custody, only to be detained by ICE at the Orange County Correctional Facility.

thus his plea was not knowing, voluntary, or intelligent; (4) his conviction was a *Brady* and Due Process Protection Act violation; (5) he did not voluntarily enter the United States after removal; (6) he was not required to obtain consent to reapply for admission; (7) 8 U.S.C. § 1326 is unconstitutionally vague; (8) he was not free from official restraint at the time of his reentry; and (9) he was not served a Reinstatement Order under INA § 241(A)(5).

## II.     STANDARD OF REVIEW

A federal prisoner in custody under sentence of a court may move the court to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. *Davis v. United States*, 417 U.S. 333, 343 (1974); *Okereke v. United States*, 307 F. 3d 117, 120-21 (3d Cir. 2002). Section 2255 provides four avenues through which relief may be claimed: (1) that the sentence imposed violated the Constitution or laws of the United States; (2) that the court lacked jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27, (1962) (quoting 28 U.S.C. § 2255 (a)).

In rendering a decision on a defendant's § 2255 motion, "a district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App' x 709, 710 (3d Cir. 2008) (quotation omitted). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 427 (3d Cir. 2000).

**III.    DISCUSSION**

Petitioner's arguments are meritless and his § 2255 must be dismissed, without an evidentiary hearing. Gonzalez-Diaz's claims are barred as he signed his plea agreement which possessed an explicit waiver provision.

Petitioner consented to a written guilty plea. The plea agreement included a comprehensive waiver of rights to appeal or collateral attack the conviction or sentence. This waiver limits Gonzalez-Diaz's ability to raise any such challenges, unless: (1) the defendant's sentence on any count of conviction exceeds the statutory maximum; (2) the defendant challenges a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines; (3) he challenges a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and (4) an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel. *See* ECF No. 22-1.

When determining the validity of a waiver, a court must consider: "(1) whether the waiver of the right to appeal [the] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver…; and (3) whether enforcing the waiver would be a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (citation and quotations omitted).

Here, the signed written agreement and the lengthy plea colloquy establish that the waiver was knowing and voluntary. *See* ECF No. 20; *see also United States v. Mabry*, 536 F.3d 231, 237-38 (3d Cir. 2008) ("[w]hereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement

[carries] no miscarriage of justice, based on the record evidence before it."). This Court's determination that the plea agreement and the appellate waiver provisions in particularly were entered into knowingly and voluntarily was based on its assessment of Defendant's responses to the Court's inquiries at the hearing as well as his averments in the agreement. *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (appeal waiver was knowing and voluntary where the court complied with Rule 11 of the Federal Rule of Criminal Procedure, requiring that the court address defendant and determine that he understands the terms of the provision of the plea agreement waiving the right to appeal or collaterally attack the sentence).

Moreover, the waiver's exceptions do not apply to the case at bar. The Government did not appeal the sentence, nor is there a contention that: (1) the sentence exceeds the statutory maximums; (2) the court erroneously departed upward pursuant to the sentence guidelines; or (3) the court imposed an unreasonable sentence. Thus, the only remedy available for Petitioner to avoid the waiver's enforcement is through showing a miscarriage of justice. He likewise fails to do this.

The waiver provided Petitioner with "certain undeniable benefits," including a lower sentence than he would have otherwise received. Specifically, Gonzalez-Diaz received a two-level downward adjustment of his offense level which resulted in a significantly lower Guidelines Range. *See United States v. Damon*, 933 F.3d 269, 275 (3d Cir. 2019) (the Third Circuit enforced a waiver agreement when the defendant sought "the benefits of it without the burdens" and found "no issue that presents a miscarriage of justice.").

Accordingly, this Court finds Gonzales-Diaz's Motion meritless.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 19) is **DENIED**. This Court also declines to issue a certificate of appealability.

An appropriate order follows.